Sewall, J.
The two questions, made in the argument of this case, have been fully considered by the Court, and the opinion in which we have finally concurred has been delayed by the suggestion that proof of payment of the bill of exchange by the plaintiff would be produced; as that fact, if proved, would have materially varied the result.
Upon the question, whether this is a case of contribution, and the defendants liable for some proportion of the sum of money undertaken to be paid by the bill of exchange, we have had no doubt. The capture was an unavoidable casualty, involving not only the cargo, but the vessel and the hire or freight, which were exclusively the property and concern of the defendants. If these were not exposed to a final loss, yet they were under detention, and there was some danger that the voyage might be defeated ; * and it was certain that it would be retarded by the Admiralty proceedings, if an adjudication had been insisted on. Seamen’s wages, provisions, and the wear of the vessel, were also exclusively the charge of the defendants, to be aggravated by the detention.
There might, indeed, be a reasonable expectation of costs and damages to be adjudged against the captors, and recovered from them. But it would have been almost a novel case, if these had amounted to a complete indemnity for the extraordinary expenses which had been, and were necessarily to be, incurred by the detention. The whole must have been a matter of calculation, of probabilities and chances, where hopes and fears might have been pretty equally balanced.
It is, however, conclusive upon the parties concerned, when a question of this nature has been considered and decided by those who, at the time, and in the actual circumstances which gave occasion to the question, have the authority to decide it. The master of the vessel becomes of necessity an authorized agent for the owners, freighters, insurers, and all concerned, when the progress of the voyage is interrupted in a foreign port, either by a capture as prize, or by other detentions and casualties; and whatever he undertakes, and whatever expenses he may incur, fairly directed to the benefit of all concerned, these become a charge upon them respectively, and, as the case may be, as much as when incurred under a special áuthority and license, or pursuant to an immediate request. (3) The request and authority are necessarily implied, when the master exercises his discretion and judgment fairly. When his determinations and proceedings are within any usual *482 course of business, as, in the event of sea damage, when he pro vides suitable repairs necessary for the prosecution of the voyage, the expense may be more readily acquiesced in; but the case is not stronger than a provision fairly made in a case of unusual and unforeseen casualties. If, in fact, there is no direct request or authority in the one * case, neither is there any in the other. It arises in both cases, and is implied from the authority and duty of the master, which enable him to engage the personal responsibility of his employers, and of those by whom the master of a vessel on freight is jintrusted, on every occa sion where his discretion is necessarily exercised to secure the purposes of the voyage. (4)
Now, in the case at bar, the master, appointed and employed 'by the defendants, may be justly considered as the negotiator himself in the compromise proposed by the captors, and finally acceded to on the part of the plaintiff as owner of the cargo, with the assent' and concurrence of Packard, the master. He endorsed the bill of exchange, which the plaintiff signed as drawer, and which the captors accepted as the ransom and price insisted on for an immediate release of the vessel and cargo. The owner of the cargo, who was also the hirer of the vessel, happened to be on board; but if he had not been, and Packard had by himself negotiated a compromise and release under the same circumstances, can there be a doubt that the plaintiff would have been liable for a contribution in the full proportion of his cargo, compared with the value of the vessel and freight ? Or, if this were a question with insurers, would they not be conclusively holden by the determination of the master, acting necessarily for all concerned ; and that, whether his decision upon the probabilities and chances before him had been unquestionably wise, or in this respect justly disapproved of, provided he acted fairly, with an attention and care directed altogether to the benefit of his employers and the concerned ?
Upon the other question, which has been argued, the final opinion of the Court is for the defendant. The bill of exchange having been dishonored, Packard, the endorser, as well as the present plaintiff, each remains liable thereon, and that for the whole amount; and the defendant, if Packard should be compelled to pay the bill, would be liable for his indemnity, as for an expense necessarily incurred in the course of his employment for them.
* But, independently of these circumstances, and supposing the bill to have been drawn by the plaintiff, and received by the captors without any guaranty or endorsement *483 from Packard, we should doubt the liability of the defendants to pay a sum of money in consequence of the negotiation of a piece of paper, which confessedly had produced no expense or damage to him, as the party who had signed it.
The case at bar will be perceived to differ essentially, in this respect, from the case of Barclay & Al. vs. Gooch, cited in the argument. There, a note given in discharge of a previous debt, and so accepted, was considered as money paid by the plaintiffs in the action, who gave the note, by which the debt of the defendant had been fully discharged, and proof that the note had been paid was not required. The discharge of the previous debt was decided by Lord Kenyon to be all that was essential.
We see no reason to doubt the justice or authority of that decision. But it does not apply in the case at bar, where the bill of exchange is the original debt, and all that the plaintiff can demand is in the nature of an indemnity for a debt incurred in part for the benefit of others.
It might not be nécessary to treat the case as strictly of that character, so far as to require proof of payment before the commencement of the action. Payment by the negotiation of a bill of exchange was advantageous, as well to the defendants as to the plaintiff; and if the bill had been accepted and paid in course, or even if taken up by the plaintiff after the commencement of the action, it might be treated, by a construction favorable to the plaintiff, and in a question as to the state of the action, the merits being with the plaintiff, as money paid when the bill was given.
But this has not happened; the bill was protested, and the de mand upon it may never be further pursued; and not only when the plaintiff commenced his action, but * even to this time, there is no proof of any payment, or even that it has been demanded of him. ' Besides, Packard, the endorser, and ultimately the defendants, continue liable upon this bill, or to be charged by means of it, and in consequence of its remaining protested and undischarged, (a)
A question as to the mode of apportionment between these parties of this supposed expense, which we have considered as in the nature of a general average, and to be so adjusted, is also referred to us; and although not now necessary to be decided, it may serve the purpose of preventing further litigation between these parties, to intimate an opinion upon it. 0
The question, as it occurred at the trial in assessing the damages, *484 supposing the plaintiff entitled to recover, respects more particularly the hire and freight. The same sum is freight, as connected with the cargo, and hire, as money due to the defendants. If the value of the cargo is to be increased by adding to it this sum as freight, saved by its arrival at the place of destination, and its increased value in the market there, there seems to be an equal reason for adding it as hire to the value of the vessel, because the hire becomes due to the owners of the vessel in consequence of her arrival.
It may be said that the hire is subject to great deductions for wages and provisions, and is not a net gain or acquisition to the defendants. But the addition of a freight to the value of the cargo may be liable to similar objections. And it seems, upon the whole, to be most reasonable, and most consonant to the rules of contribution, as observed in English decisions, (5) to estimate the vessel and cargo at their value in the place and at the time where and when the expense was incurred; which is to be adjusted by the respective owners according to their average proportions. Then the hire had not been earned to the vessel, and the cargo had not increased in its value to the amount of the freight to be paid on its arrival; and the average will be adjusted by considering the proportion * which the value of the cargo there had to the value of the vessel. There seems no reason for charging the freight or hire to one and not to the other; and if added to both, the proportion would not be varied.
As to the demurrage, a detention by capture is not demur-rage ; a covenant to pay for demurrage applies to a detention voluntary in the party contracting for the freight.

Plaintiff nonsuit

03=* Several decisions of this term, necessarily excluded from the present volume, will appear in the next.

 Marshall, 500. — Doug. 219, Milles vs. Fletcher.

 Abbott, c. 2.

 [Wells vs. Girling, 3 B. Moore, 79. — Maxwell vs. Jameson, 2 B. & Al. 51.—Cumming vs. Hackley, 8 Johns. 202. — But see Cornwall vs. Gould, 4 Pick. 444. — Ed.]

 Marsh. 467.